**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

GEORGE W. SCHWAN,　　　　　　　　　　　　Case No.: 3:17-bk-00912-JAF

　　　　　　Debtor.　　　　　　　　　　　　　　Chapter 7

_____/

**DEBTOR'S RESPONSE IN OPPOSITION TO LINDA DIAMOND'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(a)**

George W. Schwan (the "Debtor"), by and through his undersigned attorneys, hereby files this response in opposition (the "Response") to *Creditor Linda Diamond's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(a)* (Doc. No. 27) (the "Motion"), filed by Linda Diamond (the "*Creditor*"). In support of this response, the Debtor respectfully states as follows:

**INTRODUCTION**

1. A central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.[1] Bankruptcy Courts are established by federal law in order to, among other things, provide a judicial venue where honest but unfortunate debtors can go to seek to resolve claims against them that would otherwise completely exhaust resources, potentially without end. Section 707 of the Bankruptcy Code was designed to provide Bankruptcy Courts with a tool to screen cases brought before the Court where there is not either a reasonable basis to seek a discharge or where there is no estate available for distribution to creditors. In this case, there is a legitimate right to a discharge and an estate for administration.

---

[1] *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)

{00291055.DOCX}　　　　　　　　　　　　　　1

2. As set forth in detail in this Response, the Debtor's actions fall well short of the "for cause" requirement for dismissal under Section 707(a). Bankruptcy Courts exist as a place of refuge for defendants to go voluntarily as debtors to seek relief provided under Chapter 7, to surrender their nonexempt assets, fully disclose their financial history, assets, and liabilities, and receive a fresh start. This Debtor is the epitome of the unfortunate debtor. The Final Judgment (defined below) was entered against the Debtor on the basis that his attorney failed to respond to a summary judgment motion in the underlying state court action. Additionally, he was unfortunate enough to be chased for years by the Creditor who refused several reasonable settlement offers and who continues to pursue claims against the Debtor's family that are unfounded in law and in fact.[2] That is why this Debtor is before this Court and that is why this case should not be dismissed.

## GENERAL BACKGROUND

3. On March 20, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition") (Doc. No. 1) under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in the case styled *In re George W. Schwan*, Case No: 3:17-bk-00912-JAF (the "Bankruptcy Case").

4. Aaron R. Cohen was appointed as chapter 7 trustee on March 21, 2017.

5. Prior to the Petition Date, on August 8, 2013, the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (the "Circuit Court") entered an *Amended Order Granting Final Summary Judgment as to Count I* against the Debtor and in favor of Linda Diamond

---

[2] For example, Linda Diamond is pursuing an alleged fraudulent transfer wherein she admits that the property in question was property held as tenants by the entirety between the Debtor and the Debtor's wife. (Linda Diamond does not hold a joint debt against the Debtor and the Debtor's wife). *See Motion* ¶ 38 and 40. Moreover, Linda Diamond is seeking an equitable lien against the Debtor's wife's homestead in violation of binding Florida Supreme Court case law. (*See Havoc of Am. Ltd. V. Hill*, 790 So.2d 1018. 1020 (Fla. 2001) (The homestead exemption protects a homestead acquired by a debtor using nonexempt assets with the intent to hinder, delay, or defraud creditors; such a transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is *not* one of the three exceptions to the homestead exemption) (emphasis added)).

{00291055.DOCX} 2

in the amount of $225,000.00 (the "Final Judgment"). The Final Judgment is a result of the Debtor's former attorneys not filing anything in opposition to the Plaintiff's Motion for Summary Judgment.

6. On June 16, 2017, the Creditor filed the *Complaint to Determine and Avoid Dischargeability of Debt Owed to Linda Diamond* (Adv. Pro. Doc. No. 1) (the "Complaint").

7. On July 9, 2017, almost four months after the Petition Date and after the Trustee retained counsel to review Linda Diamond's alleged fraudulent transfer claims Linda Diamond filed the Motion.

8. On July 14, 2017, the Debtor filed *Defendant's Motion to Dismiss Complaint and Avoid Dischargeability of Debt Owed to Linda Diamond* (Adv. Pro. Doc. No. 4).[3]

**ARGUMENT**

**I. Creditor's Reliance Upon *In re Piazza* is Misplaced and Does Not Support Dismissal of Debtor's Case under Section 707(a)**

9. The Creditor cites the *Piazza* factors in support of her dismissal request. Courts have held that a determination concerning a dismissal must be based on the totality of circumstances and the specific facts in each case. *See In re Piazza*, 719 F.3d 1253 (11th Cir. 2013). The Motion seeks to apply to the Debtor's case the fifteen (15) factors cited in *Piazza* that some courts have used to determine whether a case has been filed in bad faith.[4]

10. Application of the *Piazza* factors is not dispositive. The *Piazza* court itself acknowledged that "this court is not required to engage in a strict factor analysis to determine

---

[3] On July 17, 2017, the Debtor filed *Defendant's Amended Motion to Dismiss Complaint to Determine and Avoid Dischargeability of Debt Owed to Linda Diamond* (Adv. Proc. Doc. No. 6). The motion was amended to comply with the negative notice procedures of Local Rule 7001-1.

[4] Although these factors are sometimes referred to in the case law as the *Baird* factors, for purposes of this Response, they will be referred to as the *Piazza* factors. These factors are applied to the Debtor's case in section (II), below.

whether the 'totality of the circumstances' indicate bad faith…". *In re Piazza*, 451 B.R. 608, 614 (Bankr. S.D. Fla. 2011).

11. The district court which affirmed the bankruptcy court's *Piazza* decision stated that "a totality of the circumstances test for determining whether a debtor acted in bad faith has emerged." *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 469 B.R. 388, 392 (S.D. Fla. 2012). The district court affirmed the bankruptcy court's holding in *Piazza* because, among other reasons, "the bankruptcy court relied on [the] fifteen factors to help shed light on the debtor's intentions and to determine whether the debtor is an honest but unfortunate debtor entitled to a fresh start." *Id.* (internal citations omitted).

12. The Court of Appeals for the Eleventh Circuit, in affirming the decisions of the two lower courts in *Piazza*, noted that "[b]ad faith does not lend itself to a strict formula . . . It is instead a fact-intensive judgment that is subject to judicial discretion under the circumstances of each case." *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013) (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)).

13. The Court of Appeals for the Eleventh Circuit, in affirming *Piazza*, went so far as to find that "we do not adopt the [*Piazza*] factors.…" *In re Piazza*, 719 F.3d at 1272. The Court of Appeals, adopting the lower courts' approach, examined the totality of the circumstances. The Court of Appeals provided the following guidance:

> In light of its inherently discretionary nature, a totality-of-the-circumstances approach is the correct legal standard for determining bad faith under [section] 707(a). The totality-of-the-circumstances inquiry looks for 'atypical' conduct…that falls short of the honest and forthright invocation of the Bankruptcy Code's protections. In making that determination, bankruptcy courts must, as they often do, sift the circumstances surrounding a claim to see that injustice or unfairness is not done. Under this inquiry, bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute

a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.

14. In the instant case, the Debtor respectfully submits there is no "atypical conduct" which falls short of the Debtor's honest and forthright invocation of chapter 7, or any deliberate act or omission by the Debtor which would constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code. Unfortunately, as a result of the Creditor preventing the Debtor from completing the work in which he intended to perform, coupled with the Debtor's former attorneys' failure to file a response to the Creditor's state court motion for summary judgment, the Final Judgment entered against the Debtor was a significant factor that led the Debtor to seek the protection of this Court. Moreover, the Creditor's unreasonable refusal to compromise and settle the parties' dispute has led to relentless collection efforts directed at the Debtor and the Debtor's family. As mentioned above, the Creditor continues to pursue claims that are unfounded in law and in fact. Considering the Creditor's aggressive tactics, along with the Debtor's financial instability and advanced age, the Debtor's options were limited and, accordingly, he recognized that filing this Bankruptcy Case was his only real option.

## II. *Based on the Piazza Factors, Creditor's Request Under Section 707(a) Must Fail*

15. The factors used by courts in determining bad faith or egregious conduct are ways for courts to reach a conclusion on a simple question: is the debtor's attempt to obtain a discharge consistent with the purposes of chapter 7 bankruptcy? In the Debtor's case, the answer to that question is yes. There is nothing about Section 707 or the circumstances surrounding the Debtor's filing that requires a de facto determination that the Debtor is not entitled to a discharge.

16. While the *Piazza* factors are not determinative, even applying the *Piazza* test to the Debtor's case shows dismissal would be improper. In response to the claims alleged in the Creditor's Motion, as applied to the 15 *Piazza* factors, the Debtor states:

(i) **The debtor reduced his creditors to a single creditor shortly before the petition date**

The Debtor did not "reduce" his creditors to one shortly before the Petition Date. The Debtor has consistently lived within his means, and the lack of significant creditors is not the result of any extraordinary maneuvering prior to filing. The Debtor has been forthright in stating the reason for his chapter 7 petition. In *Piazza*, the Debtor earned an annual income close to $100,000, continued to make monthly mortgage payments on a residence occupied by a family member, and co-signed on a family member's car loan, all while the $161,383.00 judgment was outstanding. The actions of this Debtor are inapposite to the actions of the Debtor in *Piazza*.

(ii) **The debtor made no life-style adjustments or continued living a lavish life-style**

The Debtor does not continue to live a lavish life-style. The Debtor's modest income, decreased spending, and relatively low-valued assets evidence the Debtor's life-style adjustments. Moreover, the Debtor's continuing health concerns and elderly age cloud the Debtor's current and future financial stability.

(iii) **The debtor filed the case in response to a judgment, pending litigation, or collection action**

Like many other Chapter 7 debtors, pending litigation was a factor in the chain of events which eventually led to the Debtor's bankruptcy filing. However, this Debtor did not file until several years after the Final Judgment. This case was not filed "in response," but because no other options remained.

    (iv)    **There is an intent to avoid a large, single debt**

The Debtor filed this case because there was no "light at the end of the tunnel." The significant amount of the Final Judgment, along with the Debtor's age and limited income potential, led to the decision to file this case.

    (v)    **The debtor made no effort to repay his debts**

The Debtor simply does not have the means to pay the $225,000 Final Judgment the Creditor seeks in this case. As mentioned above, the Debtor always intended on performing the services at issue in the Final Judgment, however, the Creditor prevented the Debtor from doing so. The Debtor's continued earnings are doubtful due to his current employer's downsizing and the difficulties associated with working well past retirement age. Moreover, the Debtor has made several reasonable offers to settle this obligation but all have been refused.

    (vi)    **The unfairness of the use of Chapter 7**

The Debtor in this case was forced to avail himself of the provisions of Chapter 7, and has done so in an honest and straightforward manner. He has not unfairly used any of the provisions of Chapter 7. Moreover, the filing of the Debtor's case has not left the Creditor without legal recourse against the Debtor, as the Creditor's Complaint is currently set for hearing.

    (vii)    **The debtor has sufficient resources to pay his debts**

The Debtor does not have sufficient resources to pay the Final Judgment on which the Creditor is seeking to collect.[5] Considering the Debtor's elderly age, relatively small

---

[5] Even if the Debtor and the Debtor's wife did have the resources to pay some of the debts, this, in and of itself, would be insufficient to justify dismissal under Section 707(a). *Infra*, Note 8.

{00291055.DOCX}    7

amount of nonexempt assets, and minimal disposable income, it would be unlikely the Debtor could ever satisfy the Final Judgment along with his other scheduled debts.

    (viii)   **The debtor is paying debts of insiders**

Unlike the debtor in *Piazza*, the Debtor is not paying the debts of any insiders.

    (ix)   **The schedules inflate expenses to disguise financial well-being**

The Debtor's expenses, as set forth in his Schedule J, have not been inflated to disguise financial well-being in the form of income. In fact, the Debtor's expenses are relatively low. Assuming, *arguendo,* that the expenses were deemed to be high, the total amount of a debtor's expenses is not what this *Piazza* factor addresses, rather it is the inflation of those expenses.[6]

    (x)   **The debtor transferred assets**

The property transferred pre-petition was exempt as property owned by the Debtor and the Debtor's wife as tenants by the entirety,[7] and therefore, the transferred property could not have been recovered by creditors of just the Debtor. The Creditor's argument that the conveyance of the Tuscawilla Property and the Maldive Property deprived the Debtor's creditors of recovery is misguided because such property was exempt by virtue of 11 U.S.C. § 522(b)(3)(B).[8]

---

[6] Even if the Debtors' expenses were "high," this is not sufficient to support an argument for dismissal. "A Section 707(a) dismissal is not available merely because the debtor could repay some or all of the debts." 6 Collier on Bankruptcy, ¶ 707.03[2] at 707-21 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2013); *accord In re Gordan*, 465 B.R. 683, 690 n.7 (Bankr. N.D. Ga. 2012).

[7] Linda Diamond acknowledges the Tuscawilla and Maldive properties were owned by the Debtor and the Debtor's wife as tenants by the entirety. See Motion ¶¶ 38 and 40, respectively.

[8] (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . . (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law. 11 U.S.C. § 522(b)(3)(B).

(xi) **The debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors**

The Debtor's use of the Florida homestead exemption to protect his home from creditors, along with the protections afforded by the tenants by the entirety statute, are the types of protections most debtors typically use when filing for bankruptcy relief.

(xii) **The debtor employed a deliberate and persistent pattern of evading a single major creditor**

The Debtor filed this chapter 7 case due to his inability to satisfy all of his debts. The Debtor has not employed a deliberate pattern of evading a single major creditor; rather he has been faced with the hard reality of financial instability, continuing health concerns, and rising debt. Like many similarly situated individuals facing insurmountable debt, the Debtor turned to the Bankruptcy Court for a much-needed fresh start.

(xiii) **The debtor failed to make candid and full disclosure**

This factor does not apply to the Debtor's case.

(xiv) **The debtor's debts are modest in relation to his assets and income**

A review of the Debtor's Schedules B, I, and J reveal that hundreds of thousands of actual and potential liabilities are not modest in relation to the Debtor's assets and income.

(xv) **There are multiple bankruptcy filings or other procedural 'gymnastics'**

The Debtor has never filed a bankruptcy petition in this or any other district nor has he engaged in any procedural gymnastics. The Debtor was forced to file this case in response to insurmountable debt, continuing health concerns, unpredictable future income, and financial instability.

**III.**   ***A Totality of the Circumstances Analysis Requires the Conclusion that the Creditor's Motion, Not the Debtor's Case, Should Be Dismissed.***

17.   As set forth above, the Eleventh Circuit Court of Appeals did provide guidance for courts determining bad faith for purposes of Section 707(a). The court advised that "[t]he totality-of-the-circumstances inquiry looks for 'atypical' conduct…that falls short of the honest and forthright invocation of the Bankruptcy Code's protections." *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013).

18.   Under this inquiry, bad faith is ultimately "evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *Id*. at 1272. In a Chapter 7 bankruptcy case, the relevant provisions, purpose, and spirit of the Bankruptcy Code are present in two aims: fresh star, and administration of assets. *E.g., In re Lots By Murphy, Inc*., 430 B.R. 431, 435, 436 (Bankr. S.D. Tex. 2010) ("The 'twin pillars of bankruptcy' are a discharge of debt in order for a debtor to obtain a fresh start, and satisfaction of valid claims against the estate."); *In re Bilzerian*, 258 B.R. 850, 857 (Bankr. M.D. Fla. 2001) (stating that the purpose of Chapter 7 is to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's nonexempt assets for liquidation for the benefit of the debtor's creditors."). *See also, In re Baird*, 456 B.R. 112, 117 (Bankr. M.D. Fla. 2010) (Briskman, J.) (citing factors applied by the bankruptcy court in *Piazza*, but stating that "[a] Section 707(a) dismissal determination must also take into consideration the debtor's need for a fresh start. '[E]nsuring a `fresh start' for individual debtors. . . [is] at the core of federal bankruptcy law.'") (citations omitted). Both aims are present here: (1) the Debtor is entitled to a discharge in order to obtain a 'fresh start' and (2) there are assets to be administered for the benefit of the Debtor's estate.

19. The Debtor has acted properly.[9] The Creditor's actions in preventing the Debtor from completing the work for which the Final Judgment was awarded was a substantial factor that led the Debtor to file his Chapter 7 case. The alternative to a Chapter 7 proceeding was almost certain financial ruin at a stage in the Debtor's life during which it would be nearly impossible to make even the slightest recovery.

20. The Eleventh Circuit Court of Appeals also found that under the totality of the circumstances analysis, "bad faith is ultimately evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code." *In re Piazza*, 719 F.3d at 1271-72 (internal citations omitted). The Debtor respectfully submits that the Creditor has failed to demonstrate any deliberate acts or omissions on the part of the Debtor which constitute such a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code.

21. The record in this case makes it clear that the Debtor fits the paradigm of honest but unfortunate debtor deserving of a fresh start.

*[Remainder of This Page Intentionally Left Blank]*

---

[9] This Court should not be distracted by the Creditor's attempt to create a sideshow consisting of false allegations. The Creditor had the opportunity to file suit against the Debtor for these fabrications before the statute of limitations had run. The Creditor's decision not to do so or to even look into these issues is the Creditor's own fault as president of the company and co-guardian of Benjamin Diamond.

WHEREFORE, the Debtor respectfully requests the entry of an order (i) dismissing the Motion and (ii) granting such other relief as the Court deems appropriate.

DATED this 20th day of July 2017.

>*/s/ Eric D. Jacobs*
> David S. Jennis
> Florida Bar No. 775940
> Eric D. Jacobs
> Florida Bar No. 85992
> **Jennis Law Firm**
> 606 East Madison Street
> Tampa, FL 33602
> Telephone: (813) 229-2800
> Email: ejacobs@jennislaw.com
> Counsel to the Debtor

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Court's CM/ECF electronic service to **Aaron R. Cohen**, P.O. Box 4218, Jacksonville, FL 32201-4218; **Jacob A. Brown**, Akerman LLP, 50 North Laura Street, Suite 3100, Jacksonville, FL 32202; and to **Christian W. Waugh**, Waugh Law, P.A., 13940 U.S. Hwy 441, Suite 906, The Villages, Florida 32159; and to those parties who receive electronic notices via CM/ECF in the ordinary course of business, on this 20th day of July 2017.

>*/s/ Eric D. Jacobs*
> Eric D. Jacobs

D